Elizabeth V. BAGBY

v.

Frank S. BEAL, Individually and in his official capacity as Secy. of the Pa. Dept. of Public Welfare, et al.,

Donald E. Downs and Thomas F. Brubaker, Appellants.

Nos. 78–2195, 78–2408, 78–2605 and 78–2606.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1979.

Decided Oct. 5, 1979.

Robert B. Hoffman, Deputy Atty. Gen. (argued), David Max Baer, Deputy Atty. Gen., Norman J. Watkins, Deputy Attys. Gen., Chief, Civil Litigation, Edward G. Biester, Jr., Acting Atty. Gen., Dept. of Justice, Commonwealth of Pennsylvania, Harrisburg, Pa., for appellants.

Donald Marritz, Legal Services, Inc., Gettysburg, Pa. (argued), Joan Bertin Lowy, National Employment Law Project, New York City, for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

### I.

This is an appeal by the Secretary of the Pennsylvania Department of Public Welfare and the administrator and personnel officer of South Mountain Restoration Center (South Mountain) from a final order of the district court. The order declared that the appellants had violated appellee's constitutional rights under the fourteenth amendment and awarded appellee attorney's fees.

The dispute centers on appellants' suspension of appellee from her employment. On March 15, 1976, the Pennsylvania Civil Service Commission (the Commission) appointed appellee to the position of licensed practical nurse, probationary status, at South Mountain. Approximately five months later, in early August 1976, five of appellee's co-workers accused her of stealing state property. On September 9, 1976, appellant Brubaker, the personnel officer at South Mountain, told the appellee to attend a meeting in his office later that afternoon. She was not informed that the purpose of the meeting was to determine the facts surrounding the theft allegations until she arrived at the meeting. Once there, she was a given a chance to present any person who might possess relevant information to rebut the charges, but her only response was that all the charges were lies.

During the next week, two important events occurred. First, three of appellee's co-workers informed Brubaker that appellee also had abused patients during the performance of her nursing duties. Second, appellee, unaware of these latest charges, met with appellant Downs, the administrator of South Mountain, regarding the theft

allegations, and he told her that he would look into the matter. On September 17, Downs informed the appellee by letter that she had been suspended without pay. The suspension lasted ten days.

Appellee appealed her suspension to the Commission, which declined to review her case. She then filed this action under 42 U.S.C. § 1983 (1976), alleging that the failure to give sufficient notice of the September 9, 1976 meeting or to afford her an opportunity to rebut the abusive treatment charges violated due process. On November 2, 1976, her employment was terminated for reasons unrelated to this lawsuit.

The district court held that despite her probationary status, appellee had a property interest in her continued employment and that this interest was injured by her suspension. *Bagby v. Beal*, 439 F.Supp. 1257 (M.D.Pa.1977). In a separate opinion, it turned to the questions of what process was due appellee prior to her suspension and whether the appellants had failed to afford such process. The court entered a declaratory judgment stating that appellants had violated appellee's due process rights by failing to provide her with notice of the charges against her sufficiently in advance of the hearing to give her a reasonable opportunity to rebut the charges. It ordered that she be given a new hearing and specified procedures to be taken to ensure that she received due process of law. *Bagby v. Beal*, 455 F.Supp. 881 (M.D.Pa. 1978). The court also awarded appellee attorney's fees totalling $8,730. The district court did not act on appellants' motion to stay its injunction pending appeal. Therefore, the required hearing was held on December 15, 1978. The hearing examiner, after taking evidence solely on the theft charges, concluded that the suspension was just under the circumstances.

On this appeal appellants argue that the appellee did not have a protectible property interest in her continued employment and that even if she did, the presuspension hearing provided her due process. Because we conclude that these issues are moot, however, we do not reach the merits of these arguments. Appellants also assert that the amount of attorney's fees awarded by the district court was excessive. This contention will be discussed further herein.

## II.

Article III of the Constitution conditions federal court jurisdiction on the existence of an actual case or controversy. The Supreme Court recently announced a two-part test for determining whether either party has a "legally cognizable interest in the final determination of the underlying questions of fact and law." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). It held that:

> jurisdiction, properly acquired, may abate if the case becomes moot because
>
> (1) it can be said with assurance that "there is no reasonable expectation . . . " that the alleged violation will recur . . . and
>
> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*Id.* (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).

This case satisfies both prongs of the *Davis* test. First, there is very little chance that the alleged violation of appellee's due process rights will recur. She no longer is employed by the Pennsylvania Civil Service Commission, and since her dismissal she has moved out of the state. She now lives and works in Maryland. The second part of the test is satisfied because appellee already has received all of the affirmative relief ordered by the district court. She has been afforded a hearing that remedied the flaws that the district court found in the original hearing. Even though this hearing considered only the theft charges, appellee asserts in her brief and appellants do not deny that the parties have agreed that the appellants will remove any references to the abusive treatment charges from appellee's civil service records if these records ever

become public.[1] Thus there is no live controversy between the parties regarding appellee's due process claims.

Appellants offer several arguments in an effort to show that this case is not moot. First, they point out that the district court's order included a declaratory judgment stating that appellants' suspension procedure violated appellee's due process rights. They assert that this judgment continues to affect their conduct. But because of our decision that this case is moot, we follow the settled practice of vacating the district court judgment and remanding the case to the district court with instructions to dismiss appellee's complaint. *See Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). This removes any precedential effect of the district court's opinion. Regardless of the effect of dismissal of appellee's complaint, appellants assert that they remain uncertain about the constitutional rights of future employees in appellee's position. This concern covers matters too speculative and remote to support jurisdiction in this case.

The appellants' second argument is that cases never should be held moot because of a party's voluntary compliance with an injunction when it sought to have that injunction stayed. It asserts that otherwise the only way for such a party to preserve its right to appeal would be to defy the injunction. The Supreme Court, however, on many occasions has held cases to be moot when the event causing mootness was compliance with a lower court injunction. *See, e. g., DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). For example, in *Brownlow v. Schwartz*, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923), the petitioner issued a building permit pursuant to a writ of mandamus ordered by the court of appeals.

During the pendency of his appeal, the building was completed and sold to a third party. The Court held that the case was moot:

It is urged that the permit was issued by the Inspector of Buildings only because he believed it was incumbent upon him to comply with the judgment of the Court of Appeals and avoid even the appearance of disobeying it. The motive of the officer, so far as this question is concerned, is quite immaterial. We are interested only in the indisputable fact that his action, however induced, has left nothing to litigate.

*Id.* at 218, 43 S.Ct. at 264. Thus the motive of the appellants here is immaterial. The decisive factor is that their acts have left no live issues between the parties.

Finally, appellants attempt to make us do indirectly what we cannot do directly by arguing that we must review the merits of the case in order to determine whether the appellee is entitled to receive reasonable attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976). This statute provides that "[i]n any action or proceeding to enforce a provision of [section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Appellants' theory is that the district court erred in holding for appellee on her due process claims and that therefore she is not a "prevailing party" within the meaning of § 1988. Although this argument presents an issue about the meaning of "prevailing party," it does not require us to look at the merits of this case and does not disturb our conclusion that this case is moot.

This court recently tackled the difficult task of defining "prevailing party." In *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), we held that:

1. The Supreme Court relied on similar assurances in *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). There the State of Washington informed the Court that no action taken by the Court on the merits would affect DeFunis' opportunity to graduate from law school. The Court stated that "it has been the settled practice of this Court . . . fully to accept representations such as these as parameters for decision." *Id.* at 317, 94 S.Ct. at 1706.

in the context of an award [of attorney's fees] sought after the entry of a final order, a prevailing party on a particular claim is one who fairly can be found by the district court to have essentially succeeded on such claim  .    .    .    .

*Id.* at 486–87 (footnote omitted). This definition focuses not on the substantive merits of the plaintiff's claims, but rather on the relief ultimately received by the plaintiff. Thus a plaintiff is a "prevailing party" under *Hughes* if he essentially succeeds in obtaining the relief he seeks in his claims on the merits. *See also Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978) (plaintiff is a prevailing party if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.").

■ There is no question that appellee essentially succeeded on her due process claims. The district court found in her favor and ordered that she be afforded a hearing. She already has received this hearing and no action taken by this court can change the fact that she has "accomplished the objectives of [her] litigation." *NAACP v. Bell,* 448 F.Supp. 1164, 1166 (D.D.C.1978). Thus appellee is a prevailing party under § 1988. This holding is not dependent on the correctness of the district court's decision on the merits. No future proceedings involving the merits of the controversy will change this result, and our decision in *Klein v. Califano,* 586 F.2d 250 (3d Cir. 1978) (en banc), is therefore not controlling.

None of appellants' arguments persuade us that any justiciable controversy still exists in this case. Instead, this is a case where interim relief during the pendency of the appeal has completely remedied the constitutional violation found by the district court, and there is little likelihood that this appellee will be subject to such an alleged violation again. *See County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). For these reasons, we find that this case is moot.

### III.

Appellants' final point of appeal is that the district court awarded excessive attorney's fees. The district court divided its analysis of the attorney's fees issue into two parts. This resulted in separate awards for time devoted to the merits of the case and time spent on the hearing to determine the amount of attorney's fees. Neither party contests the fee awarded for time expended on litigating the merits. Therefore, we look only at that part of the district court's decision regarding the award for time devoted to the attorney's fees hearing.

There is a substantial body of case law in this circuit relating to the proper method of calculating attorney's fees, but only recently have we analyzed the circumstances in which it is appropriate to award attorney's fees for time spent determining the amount of the fee award. In *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (*Lindy II*), we held that in a private antitrust suit where the attorney's fees are paid from the same fund as the plaintiff's damage recovery, no attorney's fees should be awarded for services rendered in connection with the fee application. This was because such services do not benefit the common fund and any award for them necessarily decreases the plaintiff's actual recovery. We distinguished *Lindy II,* however, in *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978). In that case we held that the plaintiff's attorneys were entitled to compensation for time spent preparing the fee petition and successfully appealing the fee award when the award was statutorily authorized. *Prandini* was an employment discrimination case, and the award was made pursuant to 42 U.S.C. § 2000e–5(k) (1976). We recognized that in statutory fee award cases, the considerations of *Lindy II* do not apply because the fees are not paid out of the plaintiff's recovery.

■ Appellants admit that *Prandini* governs this case because the attorney's fees at issue were awarded under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976) (the Awards Act). However, they argue that *Prandini* allows the court to award attorney's fees only for

time spent preparing the fee petition and appealing the fee award, but not on time spent at the hearing to determine the actual amount of the award. Although our holding in *Prandini* did not include time spent on the fee hearing because this issue was not presented, both the language and the reasoning used in *Prandini* reveal an intent to compensate attorneys for time spent actually litigating the award:

> [T]he time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award. If an attorney is required to expend time *litigating* his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations [which is] the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

585 F.2d at 53 (emphasis supplied). Thus because the policies behind statutory fee awards apply equally to time spent preparing the fee petition and time devoted to litigating the amount of the award at the fee hearing, we hold that awards made under the Awards Act may include hours devoted to determining the appropriate amount of the fee at the fee hearing.

Having held that this time is compensable, we now must turn to the proper method of calculating the portion of the fee award relating to hours expended in processing the fee application. Similar to the calculation made in determining the proper fee for time spent on the merits of the case, the court first must multiply the hours of compensable service by a reasonable hourly rate. The figure representing hours of service should include only those hours that "it was reasonably necessary to spend . . . in order to perform the legal services for which compensation is sought." *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978).

When determining compensation for hours devoted to the merits of the case, the next step is to consider whether this base amount should be adjusted due to the contingent nature of the case and the quality of the work performed. However, in *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1219 (3d Cir. 1978), we held that:

> hours devoted to the fee petition should not be augmented or diminished because of the contingent nature of the case or the quality of work. Such hours are incurred apart from the prosecution of the main case, and it is upon the nature of the main case . . . that adjustments to the lodestar are based.

Thus these adjustments are not made on hours spent preparing and litigating the fee petition.

◼ In a case such as this one, involving an award made on the basis of the Awards Act, one further step is necessary. The court must decide whether the amounts calculated, both for time spent on the merits and time spent determining the fee, or some greater or lesser sum, are reasonable in the particular case. The legislative history of the Awards Act provides guidance in determining what factors the court should consider in reaching this decision. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The court also should evaluate the fee to be awarded in light of the substantive purposes of the civil rights statute relied upon by the plaintiff. *Hughes v. Repko*, 578 F.2d 483, 488–89 (3d Cir. 1978).

◼ In this case, the district court interpreted *Baughman* to preclude any adjustments to the figure it reached for time devoted to determining the proper amount of attorney's fees by multiplying the hours of service by a reasonable hourly rate. *Baughman*, however, dealt only with adjustments for the contingency and quality of work. It involved a private antitrust action where attorney's fees were awarded under section 4 of the Clayton Act, 15 U.S.C. § 15 (1976), not under one of the civil rights attorney's fees statutes. This latter group of statutes, including the Awards Act

involved here, requires the district court to decide whether the calculated fee, including the portion that reflects compensation for work performed in the attorney's fees hearing, is reasonable in light of the legislative history of the fee statute and the substantive purposes of the underlying civil rights statute involved. Although the district court's failure to consider this possible adjustment here constituted an error in calculating the attorney's fees, we cannot say that the total fee awarded in this case was unreasonable and amounted to an abuse of discretion by the district court.

## IV.

Because this case is moot, the judgment of the district court will be vacated and the case remanded to that court with instructions to dismiss appellee's complaint. We will affirm the order of the district court awarding attorney's fees. Costs taxed against appellants in Appeal No. 78–2606, which appeal is concerned with the matter of attorney's fees. In Appeal No. 78–2605, no costs.