622 F.2d 692
 23 Empl. Prac. Dec. P 30,965
 William WALKER, Appellant,
v.
ROBBINS HOSE COMPANY NO. 1, INC. and Ronald E. Dear, Fred
Seamans, Narty Garrison, Carleton Dill, Raymond Hose
Company, No. 1, Inc., and Harry T. Pusey, William C.
Hamilton, Charles H. Boyer, and Samuel Heite, Individually
and as officers of the Robbins Hose Company No. 1, Inc.
 No. 79-2585.
 United States Court of Appeals,
Third Circuit.
 Argued March 25, 1980.
Decided May 23, 1980.
 
 John S. Grady (argued), Bader, Dorsey & Kreshtool, Dover, Del., for appellant.
 Nicholas H. Rodriguez, Catherine T. Hickey (argued), Schmittinger & Rodriguez, P. A., Dover, Del., for appellees.
 Before ROSENN, GARTH and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 This appeal presents for review a decision of the district court granting attorneys fees and denying expert witness fees in a suit for race discrimination against a volunteer fire department. We hold that the district court properly exercised its discretion in the award of fees and costs and therefore affirm.
 
 I.
 
 2
 On August 20, 1974, William Walker commenced an action against Robbins Hose Company No. 1, Inc., its officers and directors (the Company) pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 2000d alleging that he was denied probationary membership in the Company based on his race. On November 24, 1975, on Walker's motion, the court entered an order conditionally authorizing Walker to maintain his action as a class action on behalf of all black persons of eligible age residing in the Dover, Delaware area, who have in the past or may apply in the future to become volunteer fire fighters. On May 14, 1976, plaintiff filed a motion for partial summary judgment. On December 28, 1976, the court denied the motion for summary judgment because the issue of motivation or intent was not admitted and "any inference of discriminatory preference must be drawn by the trier of fact." On March 18, 1977, the Company filed a motion to decertify the class on the ground that Walker failed to meet the numerosity requirement of Rule 23(a)(1). On September 23, 1977 the court granted the motion to decertify. 76 F.R.D. 218 (D.Del.1977).
 
 
 3
 The case proceeded to a trial on the merits. Walker claimed that the following practices were discriminatory: the recruitment process, the broad discretion afforded the Company's Investigating Committee, the subjective membership criteria, the practice of voting on applicants, and the use of arrest records in evaluating applicants. Part of Walker's evidence was the testimony of Dr. Siskin who explained the statistical improbability of having no blacks in the fire department. In an opinion dated February 8, 1979, the court held that Walker was not discriminated against on the basis of race in the denial of his application for membership but that the Company's recruitment policy violated 42 U.S.C. §§ 1981 and 1983. The court rejected Walker's other claims of discriminatory practice. An injunction was issued requiring the Company to advertise for minority applicants and to actively recruit in local schools and churches.
 
 
 4
 Walker subsequently filed a motion for attorneys fees along with an affidavit in support of his request. Walker claimed compensation for 280 hours plus the time spent on the fee application. The court held that only 78.30 hours were compensable because they could be attributed to those issues on which the plaintiff prevailed.
 
 
 5
 The court found that the reasonable hourly rate for services in 1974 and 1975 was $60 per hour and in 1976 was $70 per hour and 1978 and 1979 was $75 per hour. The court also refused to award expert witness fees as part of the costs. The court refused to adjust the lodestar on the basis of the quality of the work or the contingent nature of the case. The court awarded $7,693.25 in attorneys fees and $466.68 in costs.
 
 II.
 
 6
 On appeal Walker claims the district court misconstrued the concept of prevailing claims in determining the lodestar. In Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., (Lindy I), 487 F.2d 161, 166 (3d Cir. 1973), this court declared that a district judge is empowered to exercise his informed discretion in awarding attorneys fees and any successful challenge to that determination must show an abuse of discretion. Walker claims that the district court took an overly narrow view of the concept of "prevailing party." In Hughes v. Repko, 578 F.2d 483, 486 (3d Cir. 1978), we stated that the "district courts should analyze the results obtained by the petitioning party on particular claims" in relation to the "prevailing party" concept of the Civil Rights Attorneys Fees Awards Act of 1976.
 
 
 7
 We believe the district court acted within its discretion in defining the prevailing claims in this case. Walker claims the court erred in failing to award fees for 65 hours spent on a motion for class certification, 44 hours on a summary judgment motion and 117 hours in 1978 in trial and post trial time. We have reviewed the fee claim and we cannot say that the district court erred when it found that the time alleged by Walker did not relate to the prevailing claim of recruitment violations and thus was properly held to be noncompensable. See Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208 (3d Cir. 1978).
 
 
 8
 Walker also argues on appeal that the district court erred in failing to make findings and refusing to increase the lodestar because of the contingent nature, quality and difficulty of the work. The district court reached the following conclusion with regard to the adjustment of the lodestar.
 
 
 9
 The Court further finds that the quality of the work, the contingency issue and the limited benefit which plaintiff obtained are already reflected in the reasonable hourly rates above allowed and no other upward or downward adjustments are necessary.
 
 
 10
 Walker argues that the district court failed to make adequate findings as to the adjustment of the lodestar under Lindy I and erred in failing to make an upward revision.
 
 
 11
 We perceive no merit to this contention. Lindy I does not require that the court specify all its reasons for declining to adjust the lodestar. Rather, it requires that the court, after detailing its basis for determining the size of the lodestar, use its informed discretion in determining whether adjustment is proper. We believe the experienced and able trial judge properly exercised his discretion in this case. Walker's attorneys initially took the case on a pro bono basis rather than a contingency basis. No contingency fee arrangement was ever signed. In fact, if the Attorney's Fees Act for civil rights cases had not been passed in 1976, Walker's attorneys would not have received any fees. Thus, the attorneys laudably accepted the case because they believed an injustice was being perpetrated and, as they assert, "on the remote possibility of an attorney's fee award." In addition, the final relief was not damages for Walker but an injunction against the Company. Thus, there is not a fund to draw against. Furthermore, the trial judge may have considered that the Company is merely a volunteer fire department with limited financial resources, and not a business for profit. Finally, the fees awarded represented the highest dollar hourly wage for each year, rather than the average, and can arguably be characterized as including a premium for the character of the litigation. The district court noted the quality and contingent nature of the work and concluded the award was "reasonable" without adjusting the lodestar. We see no basis for disturbing that judgment on this appeal.
 
 
 12
 Walker's final argument is that the district court erred in failing to award a $1,000 expert witness fee as costs for Dr. Siskin, plaintiff's expert. Walker argues that expert fees could have been awarded under 28 U.S.C. § 1920 (Taxation of Costs statute), and 42 U.S.C. § 1988 as "incidental and necessary expenses." Although this court has not specifically considered the issue, several courts have awarded expert fees as costs. See e. g., Welsch v. Likins, 68 F.R.D. 589, aff'd 525 F.2d 987 (8th Cir. 1975); Commonwealth of Pennsylvania v. O'Neill, 431 F.Supp. 700 (E.D.Pa.1977), aff'd mem. 573 F.2d 1301 (3d Cir. 1978).
 
 
 13
 We find it unnecessary to decide at this time whether expert fees are allowable as costs in this circuit. Assuming arguendo that such fees are allowable, it would be within the district court's discretion to award the fees in any particular case. No statute specifically allows expert fees to be awarded as costs. Nor is there any independent statutory authority which would authorize expert fees to be charged against the Company in this case. Although there is some authority for allowing district courts to tax as costs items not mentioned in the statute, Farmer v. Arabian Oil Company, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964) (dictum), such power should be exercised sparingly, id. The district court here made no finding that this case was of such an extraordinary nature as to justify taxing a nonstatutory item as costs. Accordingly, we cannot say that the district court abused its discretion in refusing to tax as costs the expert fees.
 
 
 14
 In this case the district court denied the motion for expert witness fees, stating that "expert witness fees are not allowable in non-diversity cases in this Court, Chemical Bank v. Kimmel, 68 F.R.D. 679, 681-82 (D.Del.1975); 6 Moore's Federal Practice (2d ed.) P 54.77(5.3) . . . ." Thus, the district court chose to follow the practice in the Delaware District Court and not allow expert fees in a non-diversity case. We do not believe this was an abuse of discretion.
 
 III.
 
 15
 We hold that the district court acted within its discretion in awarding attorneys fees and declining to award expert witness fees. The judgment of the district court will be affirmed.
 
 
 16
 Each side to bear its own costs.
 
 
 17
 SLOVITER, Circuit Judge, dissenting.
 
 I.
 
 18
 I dissent from that portion of the majority's opinion which affirms the district court's failure to award expert fees. If a reading of the record could lead to the reasonable conclusion that the district court exercised its discretion in refusing to award expert fees, I would not differ from the majority that such a decision did not constitute an abuse of discretion. Unlike the majority, my reading of the language of the opinion of the district judge leads me to conclude that he acted on the assumption that the court has no power to tax expert fees as costs, and therefore he did not exercise any discretion in refusing to award plaintiff such fees.
 
 
 19
 The district court's memorandum opinion of August 30, 1979 which dealt with this issue provides an illustration of the difference in approach used by the district court when he believed he had discretion and when he didn't. That opinion ruled on plaintiff's request both for attorneys' fees and for costs, including expert fees. In part I of that opinion dealing with attorney's fees, the judge, in the exercise of his discretion, picked and chose among the various items of time for which reimbursement was sought. In each instance, the judge articulated the basis for his action. For example, some hours were rejected because "they were generally cumulative of the facts previously developed in 1975"; others were rejected because they "were not reasonably supportive of the" claim on which plaintiff prevailed.
 
 
 20
 The manner in which the judge treated plaintiff's request for expert fees is in sharp contrast. The full paragraph on costs was as follows:
 
 
 21
 II. Costs.
 
 
 22
 Plaintiff has requested Court costs be taxed in the total sum of $1,466.68. In Brown v. Consolidated Fisheries Company, 18 F.R.D. 433, 435 (D.Del.1955), this Court, following prior decisions, held that a plaintiff who obtains a judgment in his favor is a "prevailing" party within the meaning of Rule 54(d), F.R.Civ.P., and is entitled to costs even if he has sustained only a portion of his claims. See also 6 Moore's Federal Practice (2d ed.), P 54.70(4), pp. 1306-07. Thus, under 28 U.S.C. §§ 1920 & 1921, costs will be allowed to the plaintiff for: (a) the Clerk's filing fee of $15.00, (b) the Marshal's fees of $158.68, and (c) witness fees of $63.00. However, expert witness fees are not allowable in non-diversity cases in this Court, Chemical Bank v. Kimmel, 68 F.R.D. 679, 681-2 (D.Del (1975)); 6 Moore's Federal Practice (2d ed.), P 54.77(5.-3), and the $1000 expert witness fee requested will not be taxed. Finally, the Court will tax $63.00 of the costs of transcripts under 28 U.S.C. § 1920(2) which the Court finds were "necessarily obtained for use in the case." Chemical Bank v. Kimmel, supra, at 682.
 
 
 23
 (Emphasis added).
 
 
 24
 It is incomprehensible to me how a statement that "expert witness fees are not allowable in non-diversity cases in this Court" can be construed by the majority to constitute an exercise of discretion by the district court. Furthermore, the meaning of the majority's statement that "the district court chose to follow the practice in the Delaware District Court and not allow expert fees in a non-diversity case," At 695, is unclear. If the majority is saying that district courts have the discretion to decide they will not, as a matter of policy, award expert fees in federal question cases, then the majority is patently wrong, since courts must exercise their discretion by considering the circumstances of each case. In addition, there is nothing in the record to support the majority's assumption that the practice in the Delaware District Court is not to allow expert fees in a non-diversity case. The case cited by the district court for this proposition, Chemical Bank v. Kimmel, 68 F.R.D. 679 (D.Del.1975), affords little support since that was a diversity case where the court awarded defendant expert fees, stating the Delaware District "has chosen to follow the (Delaware) rule . . . which provides that expert witness fees are taxable as costs." Id. at 682. In dictum, the court did refer to the issue in non-diversity cases, but simply said "(a)lthough compensation beyond per diem witness fees, mileage and subsistence is not ordinarily paid to expert witnesses, under Rule 54(d)." Id. at 681-82 (emphasis added).
 
 
 25
 If, in fact, the Delaware District Court has a policy against payment of expert fees, that serves as further reason for this court to face the issue, rather than avoid it as the majority has done, because the contrary rule has been enunciated in the Eastern District of Pennsylvania. In Commonwealth of Pennsylvania v. O'Neill, 431 F.Supp. 700, 713 (E.D.Pa.1977) aff'd without opinion, 573 F.2d 1301 (3d Cir. 1978), Judge Fullam wrote:
 
 
 26
 The defendants correctly argue that generally fees for expert witnesses cannot be recovered as costs. See 6 J. Moore, Federal Practice P 54.77(5.-3), at 1734 (2d ed. 1948). Recently, however, many courts have awarded expert's fees as costs where the expert's testimony was helpful to the Court and played an important role in the resolution of the issues. See Wallace v. House, 377 F.Supp. 1192 (W.D.La.1974), modified, 515 F.2d 619 (5th Cir. 1975); Pyramid Lake Paiute Tribe of Indians v. Morton, 360 F.Supp. 669 (D.D.C.1973), rev'd, 163 U.S.App.D.C. 90, 499 F.2d 1095 (1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); Sims v. Amos, 340 F.Supp. 691, 695 n. 11 (M.D.Ala.), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972); La Raza Unida v. Volpe, 57 F.R.D. 94, 102 (N.D.Cal.1972), aff'd, 488 F.2d 559 (9th Cir. 1973), cert. denied, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974). I am in agreement with these cases insofar as they award expert witness fees as costs.
 
 
 27
 (Footnote omitted). Judge Fullam then analyzed the contribution of the various experts, and taxed the fees of four experts as costs against the defendants, including a fee of $1,000 for Dr. Siskin, the statistical expert whose fee is at issue in this case.
 
 
 28
 The majority's refusal to face the issue of the authority of the district courts to award expert fees as costs in appropriate cases will lead to continued uncertainty. I believe we have the obligation to clarify the rule in this circuit, and that we should articulate the rule similarly to that set forth by Judge Fullam: that district courts may use their discretion to award experts' fees as costs where the expert's testimony was helpful to the court and played an important role in the resolution of the issues. Otherwise, in certain types of cases, such as civil rights cases and Title VII cases, plaintiffs who are often without litigation funds will either be deterred from engaging necessary expert assistance or will, when they prevail, nonetheless remain uncompensated for essential services.
 
 
 29
 This approach is consistent with that followed recently by this court in Wehr v. The Burroughs Corp., 619 F.2d 276, Nos. 79-1265, 79-2403 and 79-2404 (3d Cir. April 16, 1980). There we reversed the district court's refusal to allow recovery for computer-aided legal research which we held was "reasonable, if not essential, in contemporary legal practice." At 285. In discrimination suits, the assistance provided to counsel and the court by statistical experts is often essential, rather than merely reasonable, and we should not in any way inhibit their use, reserving all the while discretion in the trial court as to reimbursement in appropriate cases.
 
 II.
 
 30
 I am also concerned that in calculating the attorneys' fees, the district court may have unreasonably bifurcated the notion of "claim" for which a prevailing party can recover attorney's fees. This was a suit by a black citizen against the Robbins Hose Company and its directors and officers, alleging that the Fire Company's recruitment, application and membership processes were racially discriminatory. Walker was unsuccessful on his disparate treatment claim involving rejection of his own application, but was successful in proving that the Fire Company, which was all-white during the relevant period, had discriminated against blacks in not recruiting them for membership. The court held the other procedures challenged as part of plaintiff's disparate impact claim, those relating to applications and membership, were not proven to have a discriminatory effect. Walker v. Robbins Hose Company No. 1, Inc., 465 F.Supp. 1023 (D.Del.1979).
 
 
 31
 In evaluating the application for attorney's fees, the district court construed the various personnel practices that were challenged to be discrete and unrelated claims, and proceeded to calculate the number of hours spent on the specific recruitment procedure found discriminatory. I am not at all sure that the claim lends itself to this analysis. Essentially, plaintiff was complaining about the policies resulting in a white-only fire company. It might be more reasonable to take a broader view of "claim" as encompassing the various discriminatory practices which resulted in the ultimate exclusion. The various practices themselves are more akin to supporting evidence than to separate claims.
 
 
 32
 There is nothing in the relevant authority in this court which impels the district court's restrictive view of the notion of the claim. In Hughes v. Repko, 578 F.2d 483 (3d Cir. 1978), the claims were truly discrete. One claim was for conspiracy in violation of 42 U.S.C. § 1985; the other alleged discrimination in violation of 42 U.S.C. § 1982. In Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208 (3d Cir. 1978), the issue arose in the context of allocating hours among various defendants.
 
 
 33
 As we noted in Bagby v. Beal, 606 F.2d 411 (3d Cir. 1979), in suits covered by one of the civil rights attorney's fees statutes, the district court is required to decide whether the calculated fee "is reasonable in light of the legislative history of the fee statute and the substantive purposes of the underlying civil rights statute involved." Id. at 417. Using that guideline and under the circumstances of this case, it would appear that there is ample basis for the conclusion that plaintiff won on his disparate impact claim, notwithstanding his inability to prove that all of the practices challenged were discriminatory. Since, in my view, the trial court applied an incorrect legal principle, I would remand because I agree with appellant that the district court misconstrued the concept of "prevailing" claims in determining the lodestar.