**Alpha SIZEMORE, Plaintiff,**

v.

**Margaret HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 84 C 6757.**

United States District Court,
N.D. Illinois, E.D.

April 4, 1985.

Helen Cropper, Uptown Office Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

■ With this case we address the controversial issue of whether or not a terminated social security disability claimant, whose suit in federal court seeks, as one of two alternative remedies, a remand order to the Secretary of Health and Human Services (the "Secretary") for a redetermination of eligibility, and whose claim is in fact remanded by this court to the Secretary, is a "prevailing party" and entitled to attorneys' fees under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412(d)(1)(A). For the reasons discussed below, we find that such an individual is a "prevailing party" within the meaning of the EAJA. We further find that this conclusion holds true where, as here, we remanded plaintiff's claim for inclusion in the Secretary's national moratorium, announced in April of 1984, which suspended disability review processes pending the passage of legislation clarifying the standard for terminating benefits. The Secretary does not contend, and therefore fails to meet its burden of making a strong showing, that the agency action giving rise to this lawsuit was substantially justified. *See Natural Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700, 712 (3d Cir.1983). Hence, plaintiff has satisfied the requirements of the EAJA and is entitled to an award of attorneys' fees.

### Background

On August 7, 1984, plaintiff Alpha Sizemore, invoking this court's jurisdiction under 42 U.S.C. § 405(g), filed a complaint against the Secretary in which she alleged that the Secretary wrongfully terminated her eligibility for disability benefits after a hearing before an administrative law judge and a review by the Social Security Administration Appeals Council. Plaintiff alleged that the termination decision was contrary to law in that the Secretary showed neither medical improvement on plaintiff's part nor clear error in the original disability determination, and was not supported by substantial evidence. Plaintiff requested that this court reverse the Secretary's finding of ineligibility or, in the alternative, remand the matter for a rehearing. Plaintiff also moved this court to remand her case to the Secretary for inclusion in the Secretary's national moratorium, restoring benefits and suspending hearings or review for terminated recipients involved in the administrative appeal process. (The Secretary did not expressly extend this moratorium to claimants such as plaintiff with pending civil cases.)

On September 7, 1984, we announced in open court that the Secretary had failed to apply the proper legal standard, as set forth by the Seventh Circuit, in determining that plaintiff was ineligible to continue receiving benefits, and remanded the case for rehearing. We also ordered the Secretary to include plaintiff's claim within the moratorium. As a result, the Secretary restored plaintiff's benefits and delayed holding a rehearing pending the passage of legislation prescribing the standard for terminating eligibility. On October 9, 1984, the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794–1813 (codified in scattered sections of 42 U.S.C.), became law, and set forth a "medical improvement" standard similar to that which plaintiff had alleged in this court that the Secretary should have applied to her claim. The Secretary has not yet held plaintiff's rehearing.

Plaintiff has filed an application for attorneys' fees pursuant to the EAJA. The Secretary opposes the application on the grounds that plaintiff is not yet at least a "prevailing party," as required for recovery under the EAJA, because plaintiff has not been deemed by this court or the Secretary to be eligible for benefits.

### Analysis

■ The EAJA provides, in relevant part, as follows:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action [other than cases sounding in tort] brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Although the statute expired by its own terms on October 1, 1984, it remains applicable to cases such as this that were commenced before the date of repeal. Pub.L. No. 96–481 § 204(c); *see Berman v. Schweiker*, 713 F.2d 1290, 1294 n. 13 (7th Cir.1983). Furthermore, the statute is applicable to actions such as this one against an agency official acting in her official capacity as well as to those against the United States itself. *See* 28 U.S.C. § 2412(d)(2)(C).

The government does not claim that its position was substantially justified or that this case falls within the "special circumstances" provision of the EAJA. Therefore, the question that determines plaintiff's entitlement to fees under the EAJA is whether or not plaintiff is a "prevailing party."

■ A claimant is clearly a prevailing party when a district court finds that the claimant is entitled to benefits, reverses the Secretary's determination of non-eligibility and remands to the Secretary simply for calculation and payment of benefits. *See McGill v. Secretary of HHS*, 712 F.2d 28, 30 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984); *Berman v. Schweiker*, 531 F.Supp. 1149, 1153 (N.D.Ill.1982), *aff'd,* 713 F.2d 1290 (7th Cir.1983); *Ruiz-Rivera v. Heckler*, No. 83C2987, slip op. at 1 (N.D.Ill. Mar. 14, 1985). The question on which courts divide is whether or not a plaintiff prevails when the Secretary is reversed and the claim is remanded, either for a rehearing because of error in the original hearing process or for the taking of more evidence because of insufficient factfinding, without a judicial finding of eligibility for benefits. *Compare, e.g., Brown v. Secretary of HHS*, 747 F.2d 878, 885 (3d Cir.1984) (remand after denial of original application); *McGill v. Secretary of HHS*, 712 F.2d at 31–32 (same); *with Haney v. Heckler*, No. 82 C 7714, slip op. at 5–11 (N.D.Ill. Sept. 10, 1984) (remand after termination); *Gross v. Schweiker*, 563 F.Supp. 260, 262 (N.D.Ind. 1983) (remand after denial of original application); *see also* cases cited in *Brown,* 747 F.2d at 881.

A number of considerations lead us to favor plaintiff's contention that she was a prevailing party in this civil action. The EAJA does not define the term "prevailing party," but the plain meaning of the term seemingly extends to a plaintiff who obtains one of the two alternative forms of relief sought—a rehearing according to specific guidelines. The standard definition of "prevailing party" is "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered...." Black's Law Dictionary 1069 (5th ed. 1979). In this case, plaintiff succeeded on the only claim in her complaint, that the Secretary's decision was contrary to law or not supported by substantial evidence. As she requested as one alternative for relief, we reversed the decision of the Secretary and ordered that the legal standard advocated by plaintiff be applied to plaintiff's claim on rehearing. Judgment was entered and we retained no jurisdiction over the matter on remand. Thus, under ordinary standards, plaintiff prevailed in her lawsuit.

Under this analysis, this case is comparable to *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir.1979), in which the Court of Appeals for the Third Circuit found that a plaintiff who had been terminated from employment was a prevailing party under the Civil Rights Attorneys' Fees Awards Act when the court ordered a rehearing by the Civil Service Commission in accordance with the

requirements of due process. In each case, the plaintiff, while not fulfilling her ultimate goal of reinstatement, successfully invoked the judicial process to require the defendant to follow more protective procedures than those that led to termination.

The Third Circuit in *Brown*, in rejecting the position advocated here by plaintiff, attempted to distinguish its holding in *Bagby*, reasoning that:

> [t]he Constitution does not guarantee anyone an absolute right to enjoy a protected interest, such as Mrs. Bagby's employment, but rather, ensures that one will not be deprived of the interest without due process of law. In the procedural due process context, the relief sought in court is the vindication of the right to be afforded an opportunity to be heard. In contrast, claimants such as Brown allege simply that a denial of an entitlement to benefits was not based on substantial evidence. Although such a claimant may request, in the alternative, relief other than his or her ultimate goal (the receipt of benefits), it is the receipt of those benefits that renders a typical Social Security plaintiff a prevailing party.

*Brown*, 747 F.2d at 883. We believe the court may have assumed its conclusion. But even if the *Brown* reasoning is correct with regard to remand after denial of an original application for benefits, as was involved in that case, we do not think a true distinction exists between the *Bagby* plaintiff and ours. Like the state employee in *Bagby*, a recipient of disability benefits cannot be terminated from the program without the benefit of certain procedures and findings. While both plaintiffs may ultimately be found ineligible, they prevailed on the only claims they raised—that they had not been accorded their procedural entitlement. True, the plaintiff in our case requested more complete relief, in the alternative, than what this court granted upon finding her claim meritorious. We had the power to grant the more complete relief, reversal without remand, if we deemed it appropriate. *See* 42 U.S.C. § 405(g). But since this court could not

have granted both forms of relief requested, and we did grant the relief which we believed to be the appropriate measure to remedy plaintiff's injury, we fail to see a reason why plaintiff did not prevail within the plain meaning of the term.

We turn to the legislative history of the EAJA to determine whether Congress intended something more restrictive than the plain meaning of the term. To the contrary, the House Report, after stating that the term should be interpreted consistently with the law that has developed under fee shifting statutes, a point discussed *infra*, emphasized the expansive reading the term was meant to be given:

> Thus the phrase "prevailing party" should not be limited to a victor only after entry of judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case ... or even if he does not ultimately prevail on all issues, *Bradley v. School Board of the City of Richmond*, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).
>
> In cases that are litigated to conclusion, a party may be deemed "prevailing" for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal. A fee may thus be appropriate where the party has prevailed on an interim order which was central to the case, *Parker v. Mathews*, 411 F.Supp. 1059, 1064 (D.D.C.1976), or where an interlocutory appeal is "sufficiently significant and discrete to be treated as a separate unit", *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.1974).

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad. News 4953, 4984, 4990 [hereinafter cited as House Report].

■ We have difficulty delineating Congress' precise meaning from this passage, because several of the cited cases do not pertain to the propositions for which they are cited. Moreover, Congress did not address the particular situation at issue here.

It is clear, though, that Congress intended fees to be available at significant junctures of a case prior to the point at which either party has entirely achieved its ultimate goals. Thus, for instance, Congress cited with approval the case of *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131 (9th Cir. 1974), where the Court of Appeals for the Ninth Circuit held that Xerox was entitled to attorneys' fees under Title VII when the court dismissed the Equal Employment Opportunity Commission's ("EEOC") appeal of a district court decision limiting the EEOC's intervention in a Title VII suit against Xerox to only one of two issues upon which the agency sought to intervene. The court awarded fees even though Xerox had not yet, of course, succeeded in defending against the Title VII claims that remained. The court gave the following analysis from which the House Report quoted:

> Although Xerox "prevailed" on this interlocutory appeal, it might still lose the principal case and thus not "prevail." We agree that litigation should not be dissected to the point that the losing party be permitted to recover attorney's fees connected with every procedural motion on which it prevails. But this interlocutory appeal is sufficiently significant and discrete to be treated as a separate unit. Thus, the fact that Xerox prevailed on this appeal qualifies it as a "prevailing party" eligible for an award of attorney's fees connected with this appeal.

*Id.* at 1133.

The case before us is an even stronger case than *Xerox* for granting fees. As discussed, plaintiff prevailed in full on the merits of her civil case and received a portion of the relief she requested, which, by its nature, left this court without jurisdiction to grant the remainder of the relief. Certainly plaintiff achieved as "significant and discrete" a victory as did Xerox, in that she succeeded in her claim that the Secretary's decision was contrary to law and, as she requested, the Secretary was required to provide her with a new hearing according to more favorable standards. Whereas Xerox succeeded only on appeal and only on one procedural fragment of its defense, plaintiff here succeeded on the merits before the district court.

Admittedly, an argument can be made from the legislative history of the EAJA which undercuts our analysis. Looking to the law of fee shifting statutes which existed at the time of the enactment of the EAJA, and which Congress intended courts to follow in interpreting the EAJA, *see* House Report at 11, courts find that the case of *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (*per curiam*) suggests a contrary result to that which we are suggesting. *See e.g. McGill v. Secretary of HHS*, 712 F.2d 28, 31 (2d Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). In *Hanrahan*, the Supreme Court determined that plaintiffs were not prevailing parties under the Civil Rights Attorney's Fees Awards Act when the court of appeals reversed the district court's directed verdict for the defendants and remanded the matter for a new trial. The Court found that a party must establish liability and entitlement to some relief on the merits in order to prevail for purposes of attorneys' fees. *Id.* at 757, 100 S.Ct. at 1989.

We are not certain that Congress meant for *Hanrahan*'s result to apply to the EAJA. The sentence of the House Report stating that the law that has developed under fee shifting statutes should guide courts in interpreting the EAJA is followed by examples, not of Hanrahan's restrictive view, but rather of expansive interpretations of the term. ("Thus, the phrase 'prevailing party' should not be limited ..." House Report at 11, U.S.Code Cong. & Admin.News 1980, p. 4990). Among these examples, the House Report cited *Xerox* in which, as noted above, the "prevailing party" did not prevail in any respect on the merits. Therefore, *Hanrahan* may not govern EAJA cases.

Even if *Hanrahan* is relevant authority, it does not govern this case where plaintiff did not achieve simply a remand from one court to another with the merits of her civil

action undetermined but rather an order on the merits remanding the matter from the court system to a non-adversarial agency procedure. The reasons that the *Hanrahan* situation is distinguishable from a case such as this one are thoroughly examined in *Haney v. Heckler*, No. 82C7714, slip op. at 8–10 (N.D.Ill. Sept. 10, 1984):

> Here, the plaintiff's claims were originally presented to an executive agency, with an appeal to the district court for the filing of a new and separate civil action. The civil action starts in the district court and is not simply a continuation of the executive action. Indeed, the executive action is deemed to be non-adversarial under the EAJA, ... and the district courts are limited to granting fees only for representation in the district court, and not in the Secretary's proceedings.... By the time the claimant files the district court action, the Secretary has made a final decision on her or his case, the executive action is completed, and a new, civil suit is started. Similarly, in remanding for further proceedings, instead of reversing outright, the district court still finally decides the issues in its action....
>
> ... The court has granted most of the relief requested by finding on the present record that the Secretary may not terminate plaintiff's benefits, and by remanding the case. Hence, plaintiff has prevailed in this civil action in a way that the plaintiff[ ] in *Hanrahan* ..., whose civil complaint[ ] requested damages and equitable relief, did not.

For the foregoing reasons, we believe that the legislative history of the EAJA supports plaintiff's claim that she is a prevailing party. The Third Circuit found support for the contrary position in a recent Senate Report accompanying a bill to reauthorize the EAJA prior to its repeal. *See Brown v. Secretary of HHS*, 747 F.2d 878, 885 n. 8 (3d Cir.1984). We believe this report has no persuasive effect. A House bill was passed in lieu of the Senate bill, CCH Congressional Index, 98th Cong., Senate (1983–84) at 20,506, and was vetoed by the President on November 9, 1984, *id.*,

House (1983–84) at 34,550. Moreover, the Senate Report did not purport to examine the meaning of the EAJA as enacted in 1981 but rather to clarify its future meaning as of 1984. Thus the Report described departures from the original EAJA, such as coverage of non-adversarial Social Security hearings, S.Rep. No. 586, 98th Cong., 2d Sess. 7–8 (1984), as well as intended interpretations of terms from the old act. Hence, the legislative report is unpersuasive subsequent history in that it not only represents the views of a different Congress than the one which enacted the EAJA applicable to plaintiff's case, *see Consumer Product Safety Commission v. GTE Sylvania Inc.*, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979); *Teamsters v. United States*, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977); but it also accompanies a bill which never acquired the force of law, *see Consumer Product Safety Commission*, 447 U.S. at 118 n. 13, 100 S.Ct. at 2061 n. 13.

Of course, the legislative history of the original EAJA did not specifically address the issue raised by this case, so that our extrapolation involves guesswork. Our guess is substantiated, though, by the fact that the legislative purposes of the EAJA are served by granting fees in suits such as this one. Those purposes were expressed in the House Report as follows:

> While the influence of the bureaucracy over all aspects of life has increased, the ability of most citizens to contest any unreasonable exercise of authority has decreased. Thus, at the present time, the Government with its greater resources and expertise can in effect coerce compliance with its position....
>
> The exception [to the "American rule" of attorney's fees] created by [the bill] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights. The bill rests on the premise that a party who chooses to litigate an issue against the Government is

not only representing his or her own vested interest but is also refining and formulating public policy.

House Report at 10, U.S.Code Cong. & Admin.News 1980, p. 4988.

This case exemplifies the concerns underlying the EAJA. Plaintiff is an indigent woman without income, property, or savings, who has, since 1973, depended primarily on federal disability benefits for her support. In 1982, the Social Security Administration notified her that, upon review of her case, it found her ineligible and terminated her benefits. Plaintiff requested and received first a hearing by an administrative law judge and then a review by the Appeals Council. At no time during these proceedings was the "medical improvement" standard applied to determine whether plaintiff's benefits could be terminated. Plaintiff filed suit in this court in August of 1984, and in September 1984, nearly two years after plaintiff stopped receiving benefits, we remanded the matter to begin the hearing process again.

Regardless of whether or not plaintiff is ultimately deemed eligible, she has been subjected to a lengthy and wearying bureaucratic process. Only through her persistence in filing her claim in the district court is she able to have the agency apply the proper standard to her case to determine if indeed she is eligible. By bringing these claims to federal court, claimants like plaintiff have not only redressed their own situations, but helped prompt Congress to pass the Social Security Disability Benefits Act of 1984 which expressly mandates application of the standard which courts previously merely inferred. *See* H.R.Rep. No. 618, 98th Cong., 2d Sess. 11 (1984), U.S. Code Cong. & Admin.News 1984, p. 3038 (agency policies have come under severe criticism in federal courts which have ruled that the agency must meet "medical improvement" standard to terminate recipients.) For these reasons we believe that granting attorneys' fees to plaintiff would serve the purposes of the EAJA.

The Third Circuit, in holding that a plaintiff does not prevail upon remand, admitted

concern about the magnitude of agency error in these cases and the need for plaintiffs to invoke the aid of federal courts to oversee agency decisions. *See Brown v. Secretary of HHS*, 747 F.2d at 881–882. In our view, the court created a fiction to circumvent its undesirable conclusion that these plaintiffs are not prevailing parties. The court claimed that a district court retains jurisdiction over the remanded claim so that, if the plaintiff is ultimately deemed eligible, the court can then award fees. *See id.* at 883–885. The court found authority for retaining jurisdiction by deferring to the reading of 42 U.S.C. § 405(g) advocated by the Secretary in that case, according to which the Secretary would be required to return to the district court upon conclusion of any remand proceeding. Plainly, though, the language in question in § 405(g) pertains only to cases in which the basis for remand is the discovery of new and material evidence. See 42 U.S.C. § 405(g) ("The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material ...; and the Secretary shall, after the case is remanded, ... modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision....") The section of the statute providing for reversal and remand for rehearing, under which we remanded this case, does not provide for such filing of the results of rehearing in the district court.

In fact, we believe that the statement of the *Brown* court that "[w]e assume that under this arrangement [of retaining jurisdiction for EAJA purposes] a district court may mark the case closed for statistical purposes, even though a final judgment has not been rendered," *Brown*, 747 F.2d at 884 n. 6, belies the claim that the court retains jurisdiction. Our cases are closed for statistical purposes when judgment has been entered and the court has disposed of the case.

The *Brown* system is also illogical because the EAJA does not cover attorney

time spent during Social Security Administration proceedings. *See* House Report at 12. The resulting paradox under *Brown* is that plaintiff's eligibility for fees depends on the result of the very portion of proceedings which is not part of the civil suit and for which she is ineligible to recover fees.

While we sympathize with *Brown*'s result of not denying fees altogether, we believe the fiction is unnecessary to the result. The civil action ends with entry of judgment. What remains to be done is an administrative, and not a judicial, function. As the Supreme Court said in *F.P.C. v. Idaho Power Co.*, 344 U.S. 17, 20, 73 S.Ct. 85, 86, 97 L.Ed. 15 (1952), "the guiding principle ... is that the function of a reviewing court ends where an error of law is laid bare. At that point the matter once more goes to [the agency] for reconsideration..." (citations omitted). The decision on remand of whether the plaintiff's "objective may be achieved" if the proper law is followed "is an administrative, not a judicial decision." *Id.* at 21, 73 S.Ct. at 87 (footnote omitted). Accordingly, we believe that plaintiff prevailed in the judicial decision which terminated this civil suit.

Yet another indication leading to this result is that the Secretary could probably have immediately appealed our remand order, rather than having to wait to appeal the rehearing requirement until the agency rendered a decision upon rehearing. The Court of Appeals for the Fifth Circuit asserted appellate jurisdiction in an appeal from a district court order like ours and held that where a district court remands a case to an agency for a new hearing in accordance with specified guidelines, the order is final and appealable. *Cohen v. Perales*, 412 F.2d 44, 48 (5th Cir.1969), *reversed on other grounds sub nom Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Supreme Court as well asserted jurisdiction over the case on certiorari to the Fifth Circuit. *Id.* While the issue is complex, virtually every circuit has agreed with the Fifth Circuit on facts such as these. *See, e.g., Bender v. Clark*, 744 F.2d 1424, 1426–1428 (10th Cir.

1984); *Souch v. Califano*, 599 F.2d 577, 578 n. 1 (4th Cir.1979); *Lopez Lopez v. Secretary of HEW*, 512 F.2d 1155, 1156 (1st Cir.1975); *Gueory v. Hampton*, 510 F.2d 1222, 1225 (D.C.Cir.1974); *Jamieson v. Folsom*, 311 F.2d 506, 507 (7th Cir.), *appeal dismissed and cert. denied*, 374 U.S. 487, 83 S.Ct. 1868, 10 L.Ed.2d 1043 (1963). The likelihood that our order is final and appealable is all the more evidence that the judicial portion of this matter is completed, and that as between the parties, it is the plaintiff who prevailed in that judicial portion, albeit not to the fullest extent she originally desired.

Our conclusion that plaintiff is a prevailing party is not altered by the fact that we instructed the Secretary to include her case in the national moratorium. In so doing, we ensured that plaintiff's rehearing would be held according to the standards to be promulgated by Congress and that plaintiff would be treated as an eligible recipient in the meanwhile. Thus, she is now receiving procedural protections which she would not have received without bringing suit to protest the improper procedure employed by the Secretary in the termination determination.

### Conclusion

For all of the foregoing reasons, plaintiff is entitled to an award of attorneys' fees under the EAJA. Plaintiff's attorney, Helen Cropper of the Legal Assistance Foundation of Chicago, has submitted an affidavit requesting $1,691.25 and detailing what she computes to be 21.55 hours of work at a requested rate of $75.00 per hour. While this request is reasonable, according to our mathematics the figures are incorrect. The hours billed total 23.35, rather than Cropper's total of 21.55. Then again, multiplying her total of 21.55 by the hourly rate of $75.00, we arrive at a product of $1,616.25, rather than Cropper's submission of $1,691.25. Because we cannot tell wherein the errors lie, Cropper should submit a corrected version of her requested bill upon which we will rule by mail.