Beatrice FINBERG

v.

Joseph A. SULLIVAN, et al.

Civ. A. No. 77–4166.

United States District Court,
E.D. Pennsylvania.

April 5, 1982.

See also, 3d Cir., 634 F.2d 50.

Bruce Fox, Henry J. Sommer, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Ralph J. Teti, Deputy City Sol., Rosalie M. Leonard, Asst. City Sol., Law Dept., Philadelphia, Pa., for Sheriff.

Howland W. Abramson, Charles W. Johns, Administrative Office of Pa. Courts, Philadelphia, Pa., for Americo Cortese.

Lawrence Mazer, Philadelphia Pa., for Sterling Consumer Discount Co.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

### A. *Introduction.*

Plaintiff Beatrice Finberg filed an action in federal court challenging the constitutionality of Pennsylvania's post-judgment garnishment-execution procedures. The complaint asserted a cause of action under 42 U.S.C. § 1983 and named as defendants Sterling Consumer Discount Co. (Sterling), Joseph A. Sullivan, Sheriff of Philadelphia County and Americo V. Cortese, Prothonotary of Philadelphia County. The background of the litigation is recited at length in the opinion of the Court of Appeals of the Third Circuit and need not be recounted here. *See Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (*Finberg I*). In *Finberg I,* the court, sitting en banc, held that Pennsylvania's post-judgment garnishment procedures violated the due process clause of the federal constitution by failing to provide a prompt post-seizure hearing at which claims of exemptions could be adjudicated and by failing to provide notice to a judgment debtor of the existence of or the procedures for claiming exemptions under state and federal law. The court also held that the Pennsylvania rules violated the Supremacy Clause because they provided a judgment creditor with a means of circumventing the Social Security Act's exemption of benefits from attachment or garnishment. Finally, the Court of Appeals vacated this court's denial of class certification and remanded the case for consideration of the declaratory judgment claims.[1]

The defendants failed to exercise their right to appeal the decision of the Court of Appeals to the United States Supreme Court. However, the defendants requested that the Court of Appeals stay its mandate in view of the action taken by the Supreme Court of Pennsylvania in promulgating amended rules to bring the state's post-judgment garnishment procedures into compliance with the constitutional requirements of due process as enunciated by the Court of Appeals. The Court of Appeals ruled that only after this court had decided the class certification issue could it be determined whether the amended Pennsylvania rules adequately safeguarded the due process rights of all parties to the controversy. *Finberg v. Sullivan,* 658 F.2d 93, 98 (3d Cir.1980) (*Finberg II*). By order of this court of September 22, 1981, a class was certified and final declaratory judgment was entered in favor of the plaintiff class. *Finberg v. Sullivan,* No. 77–4166 (E.D.Pa.

---

1. Sterling Consumer Discount Co. did not appear as an appellee in the plaintiff's appeal of the district court's rulings. The prothonotary and the sheriff appeared as appellees in support of this court's rulings. Sterling Consumer Discount Co. has not been otherwise involved in this litigation. The plaintiff's complaint named three other individuals as additional plaintiffs on the declaratory judgment claims. These plaintiffs did not appeal this court's grant of summary judgment for defendants.

Sept. 22, 1981). Presently before the court is the plaintiff's motion for the award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### B. *Award of Attorneys' Fees Against The Sheriff and Prothonotary.*

■ The Civil Rights Attorney's Fees Awards Act of 1976 provides, in part, that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The test of whether a person is a prevailing party is whether such party "essentially succeeds in obtaining the relief he seeks in his claims on the merits." *Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir. 1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981), *quoting Bagby v. Beal,* 606 F.2d 411, 415 (3d Cir.1979). Attorney's fees may be awarded to a prevailing party in any § 1983 action, *Maine v. Thiboutot,* 448 U.S. 1, 9, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980), and ordinarily prevailing plaintiffs should recover attorney's fees unless special circumstances would make such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S. Code Cong. & Ad.News 5908, 5912. The "special circumstances" exception is an extremely limited one, and is applied only in unusual cases. *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Board,* 643 F.2d 1034, 1041 (5th Cir. Unit A), *vacated and remanded,* 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981). Moreover, the burden of proof of such special circumstances is on the party contesting the award of attorney's fees. *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir.1980); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 38 (2d Cir.1978).

In this action, there is no contention that the plaintiff is not a prevailing party within the ambit of 42 U.S.C. § 1988. As a result of the decisions of the Court of Appeals in *Finberg I* and *Finberg II,* a plaintiff class was certified and a declaratory judgment was entered in favor of the plaintiff class and against the defendants. However, both the sheriff and the prothonotary argue that special circumstances exist which would render the award of attorney's fees against them unjust. First, the defendants contend that they were performing ministerial acts in compliance with the then existing Pennsylvania Rules of Civil Procedure. Second, the defendants argue that neither the sheriff nor the prothonotary had the authority to change the challenged rules. Additionally it has been suggested that Sterling Consumer Discount Co. and the state, through the Office of the Court Administrator are the parties against whom attorney's fees, if any, should be assessed.

■ That the sheriff and the prothonotary were performing ministerial acts and had no authority to change the challenged rules does not compel a finding that the award of attorney's fees against these parties would be unjust. In *Hutto v. Finney,* 437 U.S. 678, 693–700, 98 S.Ct. 2565, 2574–79, 57 L.Ed.2d 522 (1978), the Supreme Court ruled that the eleventh amendment did not bar recovery of attorney's fees from state officers acting in their official capacities. The Court recognized that persons acting in their official capacity may be held accountable for actions performed in such capacity. As a result, courts have rejected the contention that "mere functionaries," sued in their official capacities, and persons merely performing their duty by enforcing a controlling statute, are immune from liability for attorney's fees. *See International Oceanic Enterprises, Inc. v. Menton,* 614 F.2d 502, 503–04 (5th Cir.1980); *Johnson v. Mississippi,* 606 F.2d 635, 637 (5th Cir.1979). Moreover, to the extent that the defendants' argument can be interpreted to mean that they acted in good faith, in accordance with the then applicable rules of procedure, numerous courts have ruled that good faith by itself is not a special circumstance which would warrant the denial of attorney's fees. *See Teitelbaum v. Sorenson,* 648 F.2d 1248, 1250–51 & n. 1 (9th Cir.1981) (and cases cited therein); *Love v. City of Cheyenne,* 620 F.2d 235, 236–37 (10th Cir.1980); *Menton, supra,* 614 F.2d at 504.

The defendants principally rely upon *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), in which the Supreme Court held that attorney's fees should not have been assessed against the Supreme Court of Virginia and its chief justice in his official capacity "for the reasons relied upon by the District Court." *Id.* at 738, 100 S.Ct. at 1977. The district court had ruled that it would not be unjust to order the Supreme Court of Virginia defendants to pay the plaintiffs' reasonable attorney's fees in light of their continued failure and apparent refusal to amend the challenged code to conform with constitutional requirements. The Supreme Court stated that "[a]lthough the Virginia Court and its chief justice were subject to suit in their direct *enforcement* role, they were 'immune' in their *legislative* roles." *Id.* (emphasis added). The court stated that there was nothing in the legislative history of the Attorney's Fees Act to suggest that Congress intended to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity.

The district court had also considered it unjust to award attorney's fees against the State Bar defendants since they had recommended amendments to the State Bar Code which the Virginia Court declined or failed to adopt. In this regard, the Supreme Court stated:

> We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designated as an administrative agency to help enforce the State Bar Code. Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction. Nor would we disagree had the District Court awarded fees not only against the Bar but also against the Virginia Court because of its own direct enforcement role.

*Id.* at 739, 100 S.Ct. at 1978. It is apparent, therefore, that attorney's fees may be awarded against enforcement officials, notwithstanding the fact that such officials are merely complying with state or local laws.

■ The prothonotary and the sheriff in this case were clearly charged with specific duties in the enforcement of the post-judgment garnishment procedures, despite their contentions that they were merely performing ministerial functions. Their actions were the immediate cause of the attachment and freezing of Mrs. Finberg's bank account. Since the rules by which the prothonotary and the sheriff based their actions were found to be unconstitutional, it was their enforcement of these rules which caused the injury to Mrs. Finberg's legal rights. As recognized by the Supreme Court, fee awards against enforcement officials are "run-of-the-mill occurrences," and, as such, the fact that enforcement officials are performing "ministerial" functions would not, without more, constitute special circumstances.

■ Additionally, the award of attorney's fees against the sheriff and the prothonotary is consistent with the purpose of the Civil Rights Attorney's Fees Awards Act, which was intended to secure "vigorous enforcement of the civil rights laws, 'and to achieve uniformity in those statutes and justice for all citizens.' " *Shadis v. Beal,* 520 F.Supp. 858, 863 (E.D.Pa.1981), *quoting* H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 1, 19 (1976). By enacting the Attorney's Fees Awards Act, Congress provided an incentive for private attorneys to pursue civil rights claims on behalf of indigent plaintiffs, like Mrs. Finberg, who would otherwise lack the resources to seek vindication of a constitutional deprivation. To deny the award of attorney's fees against public officials sued in their official capacity, merely because they were complying with existing rules which they lacked the capacity to change, would frustrate the purpose of the Act.[2] *See Teitlebaum v. Sorenson, supra,* 648 F.2d at 1251.

2. The legislative history of the Attorney's Fees

Act reveals that Congress was aware of the

■ Attorney's fees should generally be awarded where a plaintiff's case acts as a "catalyst" for the vindication of constitutional rights. *Staten v. Housing Authority of Pittsburgh,* 638 F.2d 599, 605 (3d Cir. 1980); *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). The plaintiff's case has acted as such. I conclude that the factors enumerated by the defendants, without more, do not constitute special circumstances so as to render an award of attorney's fees against the sheriff and the prothonotary unjust.

There is no basis for the defendants' contention that attorney's fees should be assessed against Sterling Consumer Discount Corporation. Sterling, as judgment creditor, initiated the garnishment proceedings against the plaintiff. After Mrs. Finberg's deposition was taken, Sterling agreed to release the attached funds. During the pendency of the state court proceedings, the plaintiff brought this action against Sterling, the sheriff and the prothonotary. Following the release of her money, the plaintiff amended her complaint to focus upon the constitutional challenge to Pennsylvania's post-judgment garnishment procedures. Thereafter, summary judgment was granted in favor of the defendants on the declaratory judgment claims. Judgment was entered against Sterling in the sum of $23.50 to compensate the plaintiff for amounts retained by the bank for its services as garnishee. Sterling took no appeal from this judgment and otherwise did not participate in the appeal of this court's grant of summary judgment on the declaratory judgment claims. I find that the award of attorney's fees against Sterling on these facts, would be unjust.

■ Similarly, there is no basis for the defendant sheriff's contention that attorneys' fees should be assessed against the

state. The sheriff argues that service of the writ of attachment was in compliance with the post-judgment garnishment procedures. Since these rules were promulgated by the State Supreme Court, the sheriff argues that the plaintiff's challenge was essentially an action against the state. Under the *Consumers Union* decision, *supra,* it is clear that the Pennsylvania Supreme Court would be immune from suit in its legislative capacity. The sheriff attempts to circumvent this decision by contending that the attorneys' fees should be assessed directly against the state, rather than the local officials charged with the duties of issuing the writ of execution and serving it on the garnishee. The state's only involvement in this action was to enter an appearance, through the Office of the Court Administrator, on behalf of the prothonotary. I find that it would be unjust to award attorney's fees against the state on these facts.

### C. *Amount of the Award.*

■ The analytical framework for determining reasonable attorney's fees was first articulated in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*) and later refined in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (en banc) (*Lindy II*). *Lindy I* requires an initial determination of the number of hours spent by an attorney, and in what manner, multiplied by a reasonable hourly rate set by the court, based upon the attorney's reputation, status and normal billing rate. The burden of establishing these components is on the party seeking the fee. The resulting figure, or so-called "lodestar," can then be adjusted either upward or downward based upon the court's determination of the contingency of success

possibility that attorney's fees would be assessed against state or local officials.

[D]efendants in these cases are often state or local bodies or state or local officials. In such cases, it is intended that attorneys' fees, like other items of costs, will be collected either directly from the official, in his official

capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5908, 5913 (footnotes omitted).

and the unusual quality of the legal skills employed. In *Lindy II,* the court enumerated specific factors relevant to the court's inquiry into the contingency and quality factors. Other decisions in this circuit have provided further instruction as to the application of the interpretive guidelines of *Lindy I* and *Lindy II. See Walker v. Robbins Hose Co. No. 1, Inc.,* 622 F.2d 692 (3d Cir. 1980); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (1978); *Hughes v. Repko,* 578 F.2d 483 (3d Cir.1978); *Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir.1978) (*Prandini II*); *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir.1977) (*Prandini I*).

### 1. Number of Hours

The first step in calculating the lodestar amount is to determine the number of hours that were reasonably spent in support of the plaintiff's claims. Attorneys Henry J. Sommer and Bruce Fox have submitted affidavits detailing the number of claimed compensable hours expended on this action and the nature of the work upon which the time was spent. Mr. Sommer avers that he has expended a total 97.75 hours on this case excluding time devoted to the attorneys' fee petition.[3] Mr. Fox avers that he expended a total of 149.25 hours on this case excluding time devoted to the attorneys' fee petition. Of these hours of service, the court is required to ascertain the number of hours actually devoted to claims that ultimately proved successful. Credit may only be given for hours "reasonably supportive" of such claims. *Hughes v. Repko, supra,* 578 F.2d at 487; *Richerson v. Jones,* 506 F.Supp. 1259, 1263 (E.D.Pa.1981).

The yearly time allotments, excluding time spent in drafting the fee petition, are as follows:

| Year | Hours | |
|---|---|---|
| | Henry J. Sommer | Bruce Fox |
| 1977 | 2 | 8 |
| 1978 | 17 | 36.5 |
| 1979 | 42 | 55.5 |
| 1980 | 17.5 | 23.75 |
| 1981 | 19.25 | 25.5 |
| Total | 97.75 | 149.25 |

After careful consideration of the affidavits submitted by counsel, and a review of the briefs submitted to this court and the Court of Appeals, I conclude that all of the aforementioned hours were "reasonably supportive" of the successful claims. These hours clearly relate to counsel's efforts to bolster both elements of the plaintiff's declaratory judgment claim, the due process argument and the supremacy clause argument, as well as the class certification claim. The plaintiff prevailed on all of these claims.

The next and more difficult task is to determine whether it was "reasonably necessary" to spend that number of hours in support of the plaintiff's claims. *Swicker v. William Armstrong & Sons, Inc.,* 484 F.Supp. 762, 767 (E.D.Pa.1980), *quoting Hughes v. Repko, supra,* 578 F.2d at 487. The defendants contend that the number of hours is excessive, primarily because of the disproportionate number of hours devoted to preparation for oral argument compared to the number of hours devoted to the written briefs. The defendants argue that "[t]he time allotted for preparation for oral argument should at a maximum, under no circumstances, exceed one-third of the time allotted to the writing of the briefs." I find that the defendants' rule of thumb is of absolutely no value. It entirely ignores the substantial constitutional issues raised in the plaintiff's complaint and the various collateral issues which were raised in the plaintiff's appeal, including the justiciability of the declaratory judgment claims against the sheriff and the prothonotary as well as the mootness issues. I find no fault in counsel's combined additional 24 hours of preparation for oral argument before the

---

**3.** Through what is apparently a computation error, Mr. Sommer's hours for 1981 were calculated to be 19.5 where it should have been 19.25 hours. Similarly, Mr. Fox's hours totalled 8 hours and not 7 hours for 1977, and 26.5 hours for 1981 and not 26 hours. These adjustments are reflected in the figures above.

court en banc. This argument was held more than five months after the initial argument and was not confined to a rehashing of the argument made to the initial panel. That the case was argued before the Circuit Court, en banc, adds significance to the necessity for complete preparation for oral argument.

I find nothing unreasonable on the face of the affidavits concerning the number of hours expended by counsel in preparing the briefs and preparing for oral argument. There is no indication here that the work performed by Mr. Sommer and Mr. Fox was duplicative. *See Vecchione v. Wohlgemuth*, 481 F.Supp. 776, 784 (E.D.Pa.1979). Each attorney participated in the oral arguments before the Court of Appeals. Counsel should not be penalized for its thorough research and diligent preparation in anticipation of these events. Moreover, unless the hours are patently excessive or unreasonable, the court should not engage in random speculation, benefited by hindsight, as to whether a more favorable allocation could have been made of an attorney's time. I conclude that the issues were sufficiently novel and complex to warrant the number of hours claimed by counsel as to this aspect of the case. *See Hughes v. Repko, supra*, 578 F.2d at 487.

The defendants also object to the assessment of attorney's fees for hours related to counsel's work with regard to the amended rules adopted by the Pennsylvania Supreme Court. The plaintiff's complaint challenged the then existing post-judgment garnishment procedures. It was these rules which were followed by the sheriff and the prothonotary in attaching and freezing the plaintiff's bank account. As a result of the plaintiff's action, the challenged rules, in effect prior to March 16, 1981, were declared to be violative of due process. Thereafter, the Pennsylvania Supreme Court acted swiftly to amend the post-judgment garnishment rules in response to the Court of Appeals decision in *Finberg I. See* 42 Pa.Con.Stat.Ann. § 3108 (Purdon Supp. 1981) (explanatory note).

It appears from the affidavits that counsel for the plaintiff actively participated in the drafting of the amended rules after the Court of Appeals' decision in *Finberg I*. Counsel's time and efforts in negotiating with the rules committee, which was not a party to the litigation, cannot be said to be "reasonably necessary" to the plaintiff's successful claims, albeit these efforts were consistent with such claims. Their lobbying efforts did not and could not resolve the concomitant § 1983 action. In fact, the Court of Appeals, in *Finberg II*, ruled that the amendments to the Pennsylvania rules did not moot the plaintiff's action. Counsel's efforts, however laudable, were superfluous to the plaintiff's challenge to the constitutionality of the prior rules of procedure.[4] Accordingly, I find that it would be

4. The cases relied upon by plaintiff's counsel, *Sullivan v. Pennsylvania Department of Labor & Industry*, 663 F.2d 443 (3d Cir.1981), and *Ross v. Horn*, 598 F.2d 1312 (3d Cir.1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980) do not compel a different result. These cases were concerned with the award of attorney's fees where the question was whether the plaintiff could properly be considered a "prevailing party." Relying upon *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (award of attorney's fees under § 1988 upheld where plaintiff's case was settled by a consent decree that gave the plaintiff substantially all the relief sought in the complaint), the Third Circuit Court of Appeals in *Sullivan* held that a plaintiff in a Title VII action could properly be considered a prevailing party where two requirements are met: (1) the plaintiff must essentially succeed in obtaining the relief sought on the merits; (2) and the

circumstances under which the plaintiff obtained the relief must be causally connected to the prosecution of the Title VII complaint. In *Ross*, the plaintiffs challenged the state's procedure for handling suspected fraud in unemployment benefits. Changes in the processing system which cured the alleged deficiencies were made after the filing of the suit. Although judgment was thereafter entered against the plaintiffs, the court held that attorney's fees might still be awarded to the plaintiffs since the new procedures, which provided much of the relief sought, were implemented as a result of the plaintiffs' lawsuit.

In the instant case, it is clear that the plaintiff is a "prevailing party." The complaint sought, *inter alia*, a declaration that the post-judgment garnishment procedures violated the due process rights of the plaintiff. The plaintiff prevailed on this claim. Counsel's review of

unjust to assess attorney's fees against the sheriff and the prothonotary for this time.[5] I find the following hours to be reasonably necessary to the plaintiff's prevailing claims: Henry J. Sommer, Esq.—88 hours; Bruce Fox, Esq.—144.5 hours.

## 2. Amount Per Hour

The final component of the lodestar computation is the reasonable hourly rate for the services performed. Where two attorneys are involved, the court is required to fix reasonable hourly fees based on an independent evaluation of each attorney in light of the *Lindy* factors. *Baughman v. Wilson Freight Forwarding Co., supra,* 583 F.2d at 1217. Counsel has requested certain "historical" hourly rates based upon fee amounts approved by the Community Legal Services Attorney's Fees Committee. These amounts do not establish a reasonable hourly rate, but may provide a starting point. *See id.* In *Rodriguez v. Taylor, supra,* 569 F.2d at 1250, the court stated that "district court judges should look to cases of similar complexity, in particular other employment discrimination and related civil rights suits, to determine reasonable hourly rates for counsel who do not have normal private practice billing rates." I have evaluated the fee awards in several recent district court decisions and have compared the hourly rates awarded to the court's evaluation of the attorney's "experience, knowledge and legal talent." *Lindy II, supra,* 540 F.2d at 117. *See, e.g., Halderman v. Pennhurst State School and Hospital,* 533 F.Supp. 649 (E.D.Pa.1982); *Pennsylvania v. Local Union 542,* No. 71–2698 (January 6, 1982); *Johnson v. 2d National Fund Corp.,* 515 F.Supp. 1380 (E.D. Pa.1981); *Richerson v. Jones,* 506 F.Supp. 1259 (E.D.Pa.1981); *Bolden v. Pennsylvania State Police,* 491 F.Supp. 958 (E.D.Pa.1980);

*Vecchione v. Wohlgemuth,* 481 F.Supp. 776 (E.D.Pa.1979); *Pennsylvania v. O'Neill,* 431 F.Supp. 700 (E.D.Pa.1977), *aff'd mem.,* 573 F.2d 1301 (3d Cir.1978); *Meisel v. Kremens,* 80 F.R.D. 419 (E.D.Pa.1978). *See also Aamco Automatic Transmissions, Inc. v. Tayloe,* 82 F.R.D. 405 (E.D.Pa.1979) (award of attorney's fees in an antitrust action). Although these cases may serve as guideposts, the hourly rate in each case must be considered in accordance with the individual circumstances of the litigation. *Baughman v. Wilson Freight Forwarding Co., supra,* 583 F.2d at 1217.

I find Judge Bechtle's recent decision in *Local Union 542, supra,* to be particularly instructive. In that case, the court awarded attorney's fees for legal services rendered by two attorneys from Community Legal Services, Inc. (CLS) among others. Mr. Goodman, principal counsel in the case, was awarded fees at the following hourly rates:

| | |
|---|---|
| 1970–71 | $ 30.00 |
| 1972–73 | 40.00 |
| 1974–75 | 55.00 |
| 1976 | 70.00 |
| 1977–78 | 80.00 |
| 1979–80 | 90.00 |

The court stated that the hourly rates for 1970–1973 were commensurate with counsel's limited experience as a trial attorney and reflected his recent graduation from law school. The court found that the yearly increases reflected Mr. Goodman's increasing expertise in that field of litigation which was in turn reflected in the quality of his work. Andrew Price, a CLS staff attorney who worked with Mr. Goodman at the inception of the case, was awarded similar hourly rates for the years 1970–1973 based upon his limited experience and recent graduation from law school. Ger-

the amended rules occurred after the decision in *Finberg I.* Although the amendments provided the plaintiff with essentially the same relief sought, counsel's efforts in this regard were not reasonably necessary to support the claims upon which the plaintiff prevailed.

**5.** For a list of the hours excluded as attributable to time devoted to amendment of the challenged rules, *see* Appendix *infra.* [Editors Note: the appendix was not included in the opinion for publication.]

maine Ingram, a 1971 graduate of the University of Pennsylvania, was awarded hourly rates of $60 for 1977, $70 for 1979 and $80 for 1980. This, the court found, was commensurate with her experience as a litigator and a law professor. Robert Reinstein, a 1968 graduate of Harvard Law School and professor at Temple University Law School, was awarded fees based upon the following hourly rates:

| | |
|---|---|
| 1971 | $ 30.00 |
| 1972–73 | 40.00 |
| 1974–75 | 55.00 |
| 1976 | 70.00 |
| 1977 | 80.00 |

The court noted Mr. Reinstein's particular contributions to the statistical portions of the case.

In the instant action, Mr. Fox requests the following hourly rates:

| | |
|---|---|
| 1977 | $ 65.00 |
| 1978 | 75.00 |
| 1979 | 90.00 |
| 1980 | 100.00 |
| 1981 | 110.00 |

Mr. Fox graduated from Harvard Law School in 1975 and worked as a staff attorney at CLS from September of 1975 to September of 1978. From September of 1978 to the present, Mr. Fox has held the position of senior attorney at CLS. He has been involved in numerous lawsuits in state and federal court on both the trial level and the appellate level. At the inception of this litigation in May of 1977, Mr. Fox had been with CLS for more than two and one-half years. There is no indication of the extent of Mr. Fox's litigation experience prior to the inception of this case. However, I conclude that based upon his number of years in practice and the quality of the briefs initially submitted in this action, Mr. Fox is entitled to an award of fees based upon the following hourly rates:

| | |
|---|---|
| 1977 | $ 40.00 |
| 1978 | 50.00 |
| 1979 | 60.00 |
| 1980 | $ 70.00 |
| 1981 | 80.00 |

Under all of the circumstances of this litigation, including the fact that the initial decision was determined on motions for summary judgment, and little actual "in court" time was required, I find these hourly rates to be reasonable.

Mr. Sommer requests the following hourly rates:

| | |
|---|---|
| 1977 | $ 75.00 |
| 1978 | 90.00 |
| 1979 | 100.00 |
| 1980 | 110.00 |
| 1981 | 125.00 |

Mr. Sommer graduated from Harvard Law School in 1974 and worked as an "Attorney I" at CLS from September, 1974, to September, 1975, as an "Attorney II" from September, 1975, to June, 1976, and as a "Senior Attorney" from June, 1976, to the present. He has been involved in numerous cases in state and federal court on both the trial level and the appellate level. Mr. Sommer has also authored several publications, primarily in the bankruptcy and consumer law areas, and has some teaching experience. At the inception of this litigation, Mr. Sommer was a Senior Attorney at CLS. Based upon his number of years in practice, and the high quality of the briefs submitted to this court, I conclude that Mr. Sommer is entitled to an award based upon the following hourly rates:

| | |
|---|---|
| 1977 | $ 50.00 |
| 1978 | 60.00 |
| 1979 | 70.00 |
| 1980 | 80.00 |
| 1981 | 90.00 |

I find that these amounts are reasonable based upon Mr. Sommer's background and experience and the individual circumstances of this case.

### 3. *Lodestar—Case-in-Chief*

Having calculated the number of hours and the reasonable hourly rates, the lodestar can be computed as follows:

| | Bruce Fox | | | Henry J. Sommer | | |
|---|---|---|---|---|---|---|
| | Hours | Rate | Total | Hours | Rate | Total |
| 1977 | 8 | $ 40.00 | $ 320.00 | 2 | $ 50.00 | $ 100.00 |
| 1978 | 36.5 | 50.00 | 1825.00 | 17 | 60.00 | 1020.00 |
| 1979 | 55.5 | 60.00 | 3330.00 | 42 | 70.00 | 2940.00 |
| 1980 | 23.75 | 70.00 | 1662.50 | 17.5 | 80.00 | 1400.00 |
| 1981 | 20.75 | 80.00 | 1660.00 | 9.5 | 90.00 | 855.00 |
| Total | 144.5 | | $8797.50 | 88 | | $6315.00 |

These figures do not include the amount of time devoted to the attorneys' fee petition, which is subject to a separate computation.[6] Fee petition hours are not to be included in the lodestar amount for the purposes of adjusting the lodestar for contingency and quality. *Baughman v. Wilson Freight Forwarding Co., supra,* 583 F.2d at 1219.

### 4. Adjustments to the Lodestar

The final step in the determination of a reasonable fee is to consider whether an adjustment to the lodestar should be made based upon two factors: the contingent nature of the case and the quality of counsel's work. *Lindy I,* 487 F.2d at 169; *Lindy II,* 540 F.2d at 117. In addition to the factors outlined in *Lindy I* and *Lindy II,* the Court of Appeals has suggested that "the district court should evaluate the fee to be awarded in light of the important substantive purposes of the Civil Rights Act ... upon which plaintiffs relied." *Hughes v. Repko, supra,* 578 F.2d at 488–89 (citation omitted).

### A. Contingent Nature of Success

In considering whether the lodestar should be adjusted upwardly under this rubric, *Lindy II* suggests a careful evaluation of the plaintiff's burden, the risks assumed in developing the case and the delay in receipt of payment for services. *Lindy II, supra,* 540 F.2d at 117–18. I conclude that an upward adjustment based on these factors is not warranted. Although the case presented substantial constitutional questions, I would not consider the case unusually complex since the issues were narrowly defined, and the facts relatively simple. I agree with counsel that the case presented a novel application of prejudgment due process principles to post-judgment garnishment procedures. However, the legal principles themselves were well established. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The narrow question asked, and answered in the negative by the Court of Appeals, was whether the Pennsylvania rules represented the proper accommodation of the interest of the debtor plaintiff in continued use and possession of her property and the interest of the creditor in prompt and inexpensive satisfaction of the debt.

Additionally, I am not persuaded that there were any great risks assumed in developing the case nor was there any prejudice by delay in receipt of payment for services rendered. Counsel in this case did not risk numerous hours of work without guarantee of remuneration, and there were no out of pocket expenses advanced. CLS is a nonprofit, publicly-funded, legal services organization designed to provide legal assistance to the poor. *Local Union 542, supra,* slip op. at 48. Counsel cannot therefore truly be said to have been at risk in the sense contemplated by *Lindy I* and *Lindy II. Vecchione v. Wohlgemuth, supra,* 481 F.Supp. at 795.

### B. Quality of Counsel's Work

In considering whether to make an upward adjustment to the lodestar under this

**6.** *See* Part 5 *infra.*

rubric, *Lindy II* cautions that "the quality of an attorney's work *in general* is a component of the reasonable hourly rate," and thus this factor is already reflected to a degree in the lodestar. *Lindy II, supra,* 540 F.2d at 117 (emphasis supplied by the court). However, *Lindy II* suggests that the court should take into consideration such factors as the result obtained by verdict and the professional methods utilized in processing the case. I conclude that an adjustment to the lodestar based on these factors is unwarranted. Compensation for the quality and thoroughness of the briefs submitted to this court and the Court of Appeals inheres in the reasonable hourly rates previously determined. Therefore, I am of the opinion that the quality of counsel's services is adequately compensated. Although counsel's work was of high quality, I am not persuaded "that counsel has met [the] heavy burden of proving that [their] services were exceptional and that a bonus is appropriate." *Meisel v. Kremens, supra,* 80 F.R.D. at 427.

### C. *Substantive Purpose of the Civil Rights Act*

Finally, the court is required to evaluate the fee award in light of the important substantive purposes of the Civil Rights Act. *Hughes v. Repko, supra,* 578 F.2d at 488–89. In the concurring opinion in *Hughes,* Judge Garth suggested several criteria which could be relevant to the court's inquiry into this component of the fee. Judge Garth suggested that the district court might consider, *inter alia:*

the importance of the constitutional right and congressional policy which has been vindicated; the number of citizens who have been benefited or whose rights have been vindicated (either as class members or through *stare decisis*); the extent of the constitutional violation which has been remedied (*i.e.* how widespread or pervasive was the civil rights violation); whether the attorney has successfully advanced a novel theory or interpretation; the extent to which the public interest has been served.

*Id.* at 492, n. 5 (Garth, J., concurring). Based upon these factors, I conclude that there should be an upward adjustment to the lodestar based upon a multiplier of ten percent (10%).

The benefit of the plaintiff's action was not limited to her alone. The class which was certified was defined as follows:

All judgment-debtors having personal property in Philadelphia County, Pennsylvania, whose property is or may be subject to garnishment pursuant to the Pennsylvania Rules of Civil Procedure in effect prior to March 16, 1981, and who have a claim of immunity or exemption from such garnishment under either state or federal law.

The judgment further declared that due process required the post-judgment garnishment rules to provide to all judgment-debtors whose property had been garnished necessary information concerning the right to claim exemptions from garnishment and the procedures for claiming such exemptions. Thus the possibility that the garnishment might deprive a judgment debtor of exempt property was substantially minimized. The procedural protections bolstered by the plaintiff's action afford all judgment debtors protection against erroneous or arbitrary seizures. Moreover, the plaintiff's action served to vindicate an express congressional policy of protecting social security benefits from execution, levy, attachment or garnishment. This exemption was intended to insure that all social security beneficiaries have an uninterrupted use of the money received as benefits. *Finberg I, supra,* 634 F.2d at 63. As the court in *Finberg I* found, the rules challenged by the plaintiff provided a ready means for a judgment creditor to circumvent this exemption. The plaintiff's action cured this deficiency. Additionally, I note that the court's analysis in *Finberg I* has been followed by at least two other courts. *See Deary v. Guardian Loan Co.,* 534 F.Supp. 1178 (S.D.N.Y.1982) (New York post-judgment procedures violate due process); *Simler v. Jennings,* No. C–1–78–618 (S.D.Ohio Jan. 18, 1982) (Ohio post-judgment procedures violate due process). Because I conclude that the public

interest has, therefore, been served by plaintiff's action, the lodestar will be adjusted.

### 5. Lodestar—Attorneys' Fee Petition and Cost

It is clear that counsel is entitled to fees allocable to the time expended in preparation of the fee petition where the fee award is statutorily authorized. *David v. Scranton*, 633 F.2d 676, 677 (3d Cir.1980). *Prandini II, supra*, 585 F.2d at 47. The time spent in this regard is calculated under the *Lindy* lodestar analysis. This amount is not subject to the post *Lindy* discretionary adjustments, *Baughman v. Wilson Freight Forwarding Co., supra*, 583 F.2d at 1219, however, the court may adjust the fee petition lodestar to the extent that the litigation furthered the substantive purposes of the Civil Rights Act. *Bagby v. Beal*, 606 F.2d 411, 416 (3d Cir.1979). The latter adjustment is not required merely because the court has made an adjustment to the lodestar for work spent on the substantive issues in the case so long as the total fee award is reasonable. *Vecchione v. Wohlgemuth, supra*, 481 F.Supp. at 798.

Applying the *Lindy* guidelines to this case, I find that the number of hours claimed by counsel, a total of 22.5 hours,[7] appears to be reasonable. However, since much of this work did not require great legal skill, I will award attorney's fees for the time allocable to the fee petition at $50 per hour. The right of a prevailing plaintiff to statutory attorney's fees, under these circumstances, is fairly well established. The numerous decisions in this circuit have provided extensive guidelines for computing such awards. Since counsel is no doubt conversant with these guidelines, very little new research should have been required. Moreover a fair amount of time required in the preparation of the fee petition is devoted to the assimilation of a record of the attorneys' time and the nature of the work performed during that time. This does not require legal expertise and therefore should not be compensated for at the same rates as the plaintiff's case in chief. The lodestar calculation for the hours devoted to the fee petition will therefore be $1,125.00. I am not persuaded that any upward adjustment need be made to this amount in light of *Hughes* and *Bagby* as I find that the *Lindy* calculations alone amply compensate counsel for their time.

Finally, the plaintiff has requested costs in the sum of $422.00. I have examined the list of costs incurred and find them reasonable.

### D. Summary

Based upon the foregoing, I conclude that the following amounts should be awarded as reasonable attorneys' fees and costs:

| | Lodestar Case in Chief | Multiplier | Fee Award Case in Chief | Lodestar Fee Petition | Fee Award Total | Costs |
|---|---|---|---|---|---|---|
| Bruce Fox | $8,797.50 | 10% | $9,677.25 | $50.00 | $9,727.25 | $422.00 |
| Henry J. Sommer | $6,315.00 | 10% | $6,946.50 | $1,075.00 | $8,021.50 | |
| Total | | | $16,623.75 | $1,125.00 | $17,748.75 | $422.00 |

### ORDER

Upon consideration of plaintiff's petition for attorneys' fees and costs, and all supporting and opposing memoranda of law, it is ordered that the plaintiff be granted attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in the total amount of Eighteen Thousand, One Hundred and Seventy Dollars and Seventy-five Cents ($18,170.75), as follows:

| | | | |
|---|---|---|---|
| Bruce Fox, Esquire: | $9,727.25 | | |
| Henry J. Sommer, Esquire: | 8,021.50 | | |
| Total Attorneys' Fees: | $17,748.75 | Total Costs: | $422.00 |

---

**7.** This includes the amount of time required to prepare plaintiff's reply memorandum in support of plaintiff's motion for attorneys' fees.

Defendants, sheriff and prothonotary, shall be jointly and severally liable for these amounts.